All right, we'll go back on the record. Our next case is Frank C. Polara Group v. Ocean View Investment et al. Number 13-4584. Good morning, Your Honors. Andrew Simpson on behalf of the appellants. I would like to reserve four minutes for rebuttal. That is granted. Thank you. I'd like to start with quickly addressing the supplemental authority that was filed yesterday by the appellee. That's the Komanenshi case, I believe it's pronounced, Kokichimani case. And in that case, the Virgin Island Supreme Court held that in an unjust enrichment case, an equity, if there's a contract, you don't get unjust enrichment because that's an implied contract. But as to a third party, there could be unjust enrichment. And the appellee has argued that that is dispositive of the whole gist of the action doctrine. And that's incorrect. The unjust enrichment doctrine is completely separate from the misrepresentation issues, which are tort issues. What the Supreme Court said in that case was there's no remedy available when you don't have a contract and we imply a remedy with unjust enrichment. Is that inconsistent with our Addy opinion? No, Your Honors, not. Because under Addy, the whole gist of the action doctrine, the whole concept is you don't owe a tort duty. There's no tort liability. And the gist of the action doctrine has come up because people try to impose a duty arising out of a contract. But how do we have jurisdiction to even consider this gist of the action doctrine issue where you didn't raise it with the district court at Rule 50 time? Because that's we'd like to talk to you a little bit about that. Sure. The Ortiz decision of the U.S. Supreme Court held that where there are factual issues on summary judgment and the summary judgment is denied, you have to, first of all, you have to put on evidence when you go to trial on those issues, and then you have to make a Rule 50 motion on that issue. The court clearly reserved and carved out cases where there are pure legal issues. There have been two circuit cases, at least, that have so held. This court held in the Mensee case, I think it's probably dicta in that case, and it was a non-precedential decision, but it recognized also that carve out. And as we point out in our brief, it makes sense. There's no evidence to be put on once the court has ruled that as a matter of law, you cannot pursue this theory. But that's based on underlying facts, right? I mean, just like in a qualified immunity analysis of the sort there was in Ortiz, when you're making a gist of the action argument, there's got to be all sorts of underlying facts dealing with what is the nature of the relationship of the parties, what are the parties actually claiming as to the nature of their relationship, what are the benefits they assert flow from that relationship. Those are all matters of historical fact as well, ultimately, as pleading that have to bear on the question of what the gist of the action is. Isn't that the case? Not in this case, Your Honor, because the court said as a matter of law, the gist of the action doctrine does not apply here. Not the summary judgment kind of there's no question of law. This is as a matter of law, the gist of the action doctrine does not apply in the Virgin Islands. No, the district court at summary judgment said you didn't get the benefit of that doctrine because there was no contractual privity. That was a factual question. I think that was what Judge Jordan's point is. No, because the court is saying as a matter of law, in the third party, we do not extend the gist of the action doctrine to a third party, period. Well, you've just put the rabbit in the hat, Mr. Simpson, when you say as to a third party. That's the privity question. That's a question that depends on facts, and that's, you know, in the end, yes, whether the gist of the action doctrine applies or not is a question of law, but it has to be one that depends on underlying facts, doesn't it? No, Your Honor. How could the privity question not be a question of fact? It depends on what the relationship of the parties was, doesn't it? Not in this situation, Your Honor. The argument was that there is no contract. Because? Pardon me? Because? Because they're not a party to the contract. The contract is between Polara and Southgate Development Group and Southgate Crossing. And how that contract was formed and who were parties to it, those are matters as to which there was some significant dispute, wasn't there? I mean, the Polara plaintiffs were arguing that Chang was involved, that Du Bois was involved, and you were saying no, no. Those are factual disputes, aren't they? No, Your Honor. Their theory of their case, their Second Amendment complaint, specifically says Chang and Du Bois are acting for Oceanview. They're not claiming they're acting for Southgate Development or Southgate Crossing. So, no, that's the theory of their case. They know they can't argue that they're acting for Southgate Development or Southgate Crossing because if they do, the gist of the action doctrine clearly applies in that situation. So that's not their theory. Their theory is you're a third party. You can't take advantage of this. And we say we can't because we are a third party. There's no factual issue. You're saying that we're a third party. We're saying if you're correct on that, we get the gist of the action doctrine still. And the district court says, no, you don't. As a matter of law, this never applies to third-party situations. That's how the court resolved that. So your position is that there was no underlying factual issue at all bearing on the gist of the action doctrine in this case. That's correct. That's correct. And that's why there was no evidence put on as to it. The court had already ruled that this did not apply. There was no evidence. There was lots of evidence discussing the Southgate entities and Chang and Du Bois' relationship to the entities that were running the project. So there were tons of evidence put on. And it seems there was no argument being made about the existence or nonexistence of a contract. It seemed completely abandoned. The law clerk made a really pretty flowchart here I'm looking at. It's really confusing. I'm sorry? I'm just saying my law clerk put together a really neat flowchart for me so I could somehow understand this whole thing. There's a lot of facts here. There are a lot of facts, questions, but they go to the unjust enrichment and the misrepresentation arguments. They don't go to whether, as a matter of law, a third party can assert the gist of the action doctrine. And we clearly made... What I guess Judge Jordan is saying is that aren't there predicate facts where you get there and once you line up all those facts then you can say, okay, looking at the facts as a matter of law, you know, what you're saying. But don't you need these predicate facts to line up in order to make that determination? No. Not when the theory of the case is this is a third party. We're moving for summary judgment on their complaint. Their complaint says you're a third party and you're acting for Oceanview. There's no question. Oceanview has no contract with Polera or his company. There's no question at all. And that's not the basis of the claim. And so he says you are acting, you took this action as Oceanview. And we're saying we get the gist of the action doctrine. And the judge says, no, you don't. That doesn't apply to third parties. Period. That's the whole theory. They're not saying we have a different theory, we are under a contract with them. Or that they're Southgate Development Group. They insist we are acting for Oceanview. And this is Oceanview acting. And it's unquestioned there's no, that that's a, that, you know, that that was an issue of law as to whether or not the gist of the action doctrine applies in the Virgin Islands to third parties. That's how the court ruled. This court then came out with this decision in Addy that makes it clear that that's not the case. And so that should be reversed on that ground. So assuming that you're correct about that and, of course, we'll be hearing from Ms. Lawrence about whether there are facts in dispute or not to bear on this. But assuming you're right about that, what is it that allows you to argue that there's no agency here? I think I've got an assertion that you concede in your brief that Ms. Chang was one of the managers of, and I'm not sure what O-M-E-I stands for, if that's an acronym that stands for something. No, it's O-M-E-I Inc. is its name on the article. It just says what it is. Okay. Yes. O-M-E is how it's pronounced. O-M-E? O-M-E, yes. That she was one of the managers of O-M-E and thus at least theoretically possible for the jury to attribute some action by Chang to O-M-E. That's a concession you make. If that's true, then isn't it the case that there is a basis for the jury's finding here of liability, that there is an agency there that the jury could reasonably look to to sustain the verdict? No, Your Honor. First of all, the jury was not instructed that Ms. Chang could act for O-M-E, or that O-M-E could act for Oceanview. It was only instructed that an individual can. That was the instruction that was given. There was no objection to it.  But the jury verdict, she asked whether or not she was acting on behalf of Oceanview or O-M-E. Yes. It asked that question because she could be acting theoretically for Oceanview, or she could be acting theoretically for O-M-E, and that would be a basis to hold O-M-E liable for her actions, or if they found that she was, or a basis to hold Oceanview liable if they found that she was acting for Oceanview. Of course, there's no evidence at all that she's acting for Oceanview. The only evidence in the record at all is that O-M-E is a manager of Oceanview. But there's no... O-M-E is a manager of Oceanview. She is the voice or agent of O-M-E, giving instructions, and the record is replete with evidence, isn't it, Mr. Simpson, that she's telling Mr. Pallar what to do? You know, she's telling him do this, don't do this, do the other thing, don't do the other thing. I mean, if the jury can reasonably conclude that O-M-E is managing Oceanview, she's the voice of O-M-E, why can't it make the conclusion, based on the verdict form you agreed to, that there's an agency relationship there that extends to her directing Oceanview? Well, first of all, there's the problem of the fact that she's found to have acted with intention and O-M-E is found to have acted negligently. But didn't you waive that by not objecting to the verdict while the jury was still in the midst of the court? No, Your Honor. This is a general verdict with special questions. The case law suggests you've got to object then so that the jury can be redirected to evaluate their verdict. Didn't you waive that under Rule 49? No, Your Honor. That's a special verdict. They were asked to answer questions and the judge made the decision and entered the judgment. That's what we... How is this a special verdict? A special verdict connotes that there are fact findings that are made by the jury and then the judge takes those facts, applies the law to the facts and makes a conclusion. Here, the jury was asked specifically whether or not they found these entities or individuals liable for the various misrepresentations and then awarded damages. Why is this not a general verdict with special questions? Or written questions, I'm sorry, under Rule 49. I'm sorry, with what? Written questions, I think, is the way the rule reads. Because they're not making an overall finding of liability. The rule, I think, is very clear on that point. We pointed to a Third Circuit case with very similar questions asked of the jury and it was found to be a special verdict. A citizens case? I think so, yes, Your Honor. And then what about, there's another case, Stanton and Mally Duff, and they look at similar verdict sheets and sometimes they say it's a special verdict and sometimes it says it's a general verdict and that you're asking for liability. How do you find this not to be a question asking the jury to make a finding of liability on misrepresentation, the theory of their case? What more was the judge, the judge wasn't required to do anything else other than literally sign the judgment? Your Honor, well, the judge had to make, then make decisions as to how to impose the liability versus Oceanview, versus OMI, versus the individuals. You asked that on the verdict sheet. I mean, that was asked. The jury asked, was asked is there, if you find there is a misrepresentation, whether negligent or intentional, do you find it was on that person's own behalf or on behalf of these entities? The jury did all that liability work. Let's take the example Judge Jordan gave where, assuming the jury had been properly instructed that OMI could be, could make Oceanview liable, that the finding that Oceanview made a misrepresentation does not allow an imposition of liability because there's been no finding by an agent, OMI, acting for it. That requires the judge's interpretation of the law. But that was, that's the inconsistent verdict problem, which I think we just have, we're looking at slightly differently. I think that it possibly may have been waived, and that's why I'm inquiring of you to try to educate me why I'm wrong. And you're jumping past that and saying as a legal proposition you can't have an agent acting intentionally and a principal acting negligently. Well, I'm saying that that's why the judge has to, it's not a ministerial task for the judge to enter a judgment. The judge has to analyze it and decide whether there's a basis to hold OMI liable, or Oceanview liable. There's a lot of moving parts here. What is your, what would you like us to do exactly? I think whether it's on the gist of the action doctrine or on the massive failures of evidence on each individual elements and each count or each theory, that the court should reverse and enter judgment, or in order of entering judgment for the appellants. Summary judgment? No. The judgment on the verdict. Because they failed to prove their case. Forget all about the gist of the action doctrine. We have a plaintiff who can't prove his damages. He doesn't know what his damages are. There's no, you know, let's take the building permit issue. He says there's a misrepresentation made. Where's the evidence that any of these four appellants knew that a building permit was not issued? There is evidence in the record that Rick Willis told them a building permit was not issued. Now you're getting into the sufficiency. You've got a high hill to climb right there. I mean, the jury had no problem finding the damages either. But why don't we get you on, we'll get you on rebuttal. Thank you. Thank you. Good morning. Good morning. Maria Lawrence on behalf of the appellees. This is a case where a Virgin Islands jury was actually able to see that there were a group of people who used the appellees for the purpose of getting work for free under the promise that, hey, you're going to become a partner in this thing. You're going to get 25 percent of a $20 million profit deal. That's about $5 million. Okay. Do this work, do all these things, and you're going to end up getting paid. Ms. Lawrence, we're familiar with the background here. Why don't you help us out with the gist of the action doctrine and whether it's been waived or not. You know, one of the challenges we've got is to decide whether that's even properly in front of us for decision. You've heard Mr. Simpson say that it absolutely is because there's nothing in dispute here on the facts, and so it's purely a question of law. Do you agree or you disagree with that? We disagree. And it's most clear when you realize that argument was brought in a summary judgment motion where facts had to be articulated. If it was a clear-cut liability issue, there's a motion for judgment on the pleadings, there's a Rule 12b-6 motion to dismiss, there's all sorts of other procedural mechanisms, but it was a summary judgment motion for a reason. There were a lot of facts that went into determining whether or not these people that were sued were actually parties to a contract, whether they were third parties, what was their role in the underlying action. There were so many facts. Mr. Simpson says, yeah, but those things aren't actually in dispute. In fact, not to speak for him, but I think he might say, yeah, that's why it was a proper summary judgment motion because there wasn't any fact in dispute. They were agreed and we were agreed on the basic underlying facts. They never argued that there was the kind of privity here, et cetera, et cetera. So what's your answer to that? But their whole argument was that, hey, we weren't a party to this thing. This is all contractual work. And we argued, no, this is all extra-contractual work that you and Chang and Dubois sent these people down here to get all this benefit from Mr. Pallara, and therefore you are liable. And just because you are a third party doesn't mean you escape liability under theories of even, for example, the breach of good faith and fair dealing, which is a tort liability that derives from the contractual relationships of people. The idea that these appellants ---- It's not a tort liability. The breach of the duty of good faith and fair dealing is a contract issue. Yeah, but it's a fraud issue. That's an element of fraud in there. You have to show that there was a misrepresentation, that there was reliance on a misrepresentation, and there was detriment. That's all built into the breach of good faith and fair dealing. Those are the elements of the Virgin Islands of how you prove that there was a breach of good faith and fair dealing. Well, that really is going to the point that we're trying to wrestle with here, right? That goes to the question of what is the gist of this action, right? And I understand Mr. Simpson to be arguing that there was no need for them to make a Rule 50 motion because you at the trial never put into dispute any of the facts about privity, any of the predicate facts would line up to make a question of whether there were contract or extra contract remedies that were at stake. Is he wrong about that? If so, explain why. He is wrong because you put on evidence based on the issues that are in dispute. The appellants in the joint final pretrial order never raised gist of the action as an offense, never asked for jury instruction on that issue, never asked for any of these things. So the idea that the appellees are going to be held to putting on a case where they didn't raise it as an issue for trial, that's why Ortiz is there. Once you're in trial, the issues that are raised at trial are what governs. But in fairness, you had a pretty clear ruling by a district judge on summary judgment. Isn't it kind of futile to say, hey, let's pursue this? I disagree, Your Honor, because the judge's ruling was based on her determinations of what facts were. There's always you always have to preserve, and I just don't believe that this is the case where it was a pure question of law that was at stake. There were a lot of factual issues that went on into that summary judgment ruling. So when your adversary, I think, was trying to characterize what happened in summary judgment was the following, and if I'm mistaken, I'll ask him to correct me when he gets up on rebuttal. His view, I think, is that the summary judgment ruling was the following proposition. The gist of the action doctrine cannot be invoked by third parties, legal proposition. His view, I think, is he shouldn't have to raise that again. Why is he wrong? He's wrong because at trial, if the judge determined as a matter of law, the gist of the action doctrine does not apply to third parties, which I don't believe that's necessarily the case. I believe that there was a lot of factual. I remember the summary judgment briefing. There was a lot of factual stuff that went into there. You raise it at the trial phase as an affirmative defense in order to preserve. In the event we're back on review, and especially in this context, you have all these things and evidence. A trial happened for multiple days. These could have been disposed of. The same thing with the jury verdict form and the inconsistency. All it required of appellees was to say, your judge has an inconsistent verdict here. Don't discharge the jury. They need to be properly instructed. Now we're talking about scrapping an entire trial and not even looking for a new trial. They're looking for judgment as a matter of law in their favor after all of this overwhelming evidence has been put on, and after a jury was able to determine that there was substantial fraud that happened in this case. You don't just get to scrap everything and ask for judgment as a matter of law in your favor. It doesn't happen that way, especially when you, excuse me, especially specifically where there was so much evidence of misrepresentations, so much evidence of them hiding stuff from Mr. Pallara. We're familiar with the facts. Sorry. And the trial record. If we could just, you made a comment about the verdict sheet and the waiver, the failure to raise. Your adversary says it's a special verdict. Why is it a general verdict from your side? There's nothing else to be done but to sign the judgment. There wasn't. The jury did everything. And it's clear that it bothers you. Something seems wrong where after all of this is done, the jury has been discharged. You now raise this issue of an inconsistent verdict when it could have been dealt then and there while the jury was still impaneled. And it is a general verdict. The judge had nothing to do. They did everything. It was over. And you're saying that the jury made all the liability. The judge made all the determinations. You mean jury? Sorry, the jury. I'm sorry. That's okay. The jury made all the determinations, and there was nothing else left to do but to file a verdict form, sign judgment. The case was over with. And in this case, there was a lot of issues, and specifically in terms of whether or not the Rule 50 motion, at the close of the case, was sufficient. We believe it was not. The appellants make the argument that their brief description of this case when there was insufficient evidence, that there was any misrepresentation against the defendant, was sufficient. And then in the reply brief, they make the argument that they meant defendants because there were multiple defendants, and that the court made an error in the transcription. But there's been no Rule 10 Federal. There's no Federal Rule of Appellate Procedure 10 motion to correct the transcript. It was completely insufficient, what they did. Let's assume that, for some reason, the verdict is read as a special verdict, and they didn't need to raise the inconsistency. And then we have to turn to reviewing for sufficiency. My question is, how do we, and your adversary raised this point, how do you reconcile this circumstance where the jury made a finding of intentional conduct by the agent but negligent conduct by the corporate entity? It could just be a matter of compromise. The jury is there, and they're seeing that Cheng, and we have to remember, Cheng had money, some of her own personal money, into this project, as well as money of her direct family members. And the jury could have just said they're going to compromise with respect to Omi and just find negligent representation and find intentional representation as to Cheng. There's no evidence that the jury was confused. It could have just been a matter of compromise so that they wouldn't be held. You're saying there's no conflict in the jury verdict. I don't believe there is. And the judge read it the same way we did. The verdict was protected by making sure that the jury at any point in time could select no misrepresentation. The only thing that intentional misrepresentation does is subject you to punitive damages. So Omi actually benefited in that they didn't have any punitive damages assessed against them. How do you respond to the assertion that it's impossible for the agent to be guilty of intentional misrepresentation when the principal, maybe I'm saying this poorly, but that the main actor is only guilty of negligent misrepresentation? Do you understand the question? In terms of which? Well, I understand the assertion to be that Omi or Oceanview here is that Omi is responsible only for negligent misrepresentation, right, and Oceanview for deliberate misrepresentation, correct, whereas Omi is the managing and influencing party here according to a rather convoluted organization chart. And if I understand your opponent's argument correctly, there's an inconsistency there because how could the controlling party be only negligent and Oceanview be then guilty of deliberate misrepresentation? What's your response to what is posed to us as a logical conundrum? The jury was asked to assess whether or not Chang was acting on her own behalf as well as on behalf of these other entities. The jury was faced with a lot of evidence, and for them, they determined that Chang was acting intentionally on her own behalf, and she was acting intentionally on behalf of Oceanview and Omi, and then they decide to compromise in terms of the fact that Omi were these investors who let Chang loose but didn't control her accordingly, and so the jury engaged in compromise. There's no reason why a jury can't compromise in a verdict and determine, listen, we are not going to hold Omi as intentional in order to avoid the punitive damages. There's no reason why they couldn't. And you reverse a verdict if somebody is, excuse me, harmed and Omi benefited by the jury compromise. By being protected from punitive damage. By being, yeah, they weren't assessed any punitive damages. All the other actors were assessed punitive damages. Omi was not assessed punitive damages. And so that I expect you don't, even if the court was to determine or this court was to determine there was an inconsistency there, the remedy is not entering judgment on behalf of everybody. The remedy, these are all separate actors, and that's what is kind of, you know, concerning here is the relief the appellants are seeking is that just throw everything out. It's over. Everybody's not guilty. Everybody's, nobody did anything, and the case is over. Is it fair to say that you agreed with the district court's assertion that there was no privity between, that would allow the appellees here to take advantage of the assertion that there's no tort remedies? I'm sorry, can you repeat the question again? Well, the district court said in its summary judgment opinion, quote, this doctrine, meaning the gist of the action doctrine, is not triggered by the mere existence in a vacuum of a contract. Instead, absent circumstances not addressed by defendants in this case, it applies to parties in contractual privity. I read that to mean the district court was saying there was no privity here and that the defendants didn't assert that they were in privity. On the contrary, they disowned the written agreement. That was the basis of the summary judgment ruling, correct? Those are the fact issues that she had to determine. Well, she didn't determine them, right? She couldn't have determined them on summary judgment. She took it as a given that they weren't in dispute, correct? What she said was the defendants have asserted that they're not in privity. That's what she said. That's a factual determination based on the evidence that was submitted before her. Maybe we're just playing a semantic game. I'm sorry. I view that as a factual determination because the court can't make factual determinations on summary judgment. She's accepting a position articulated by the defense. At least she understands it to be the position articulated by the defense. And the question I'm trying to put to you now is, did you agree with her that that is the defense position, and was that indeed also the plaintiff's position that there was no privity? Yes, with the entity that was actually a party to the contract. Right. So is the defense, the appellant here, the appellants here, then correct in arguing that while just the action doctrine may sometimes depend on underlying facts here, it didn't depend on any underlying facts because everybody was in agreement with the operative facts? I understand the proposition that you're— Well, at least that operative fact, right? Yes, at least that operative fact. Everybody's on the same page as to privity. Yes, Your Honor. At least to that operative fact, yes. And is there any other operative fact that would bear on the question of whether the gist of the action doctrine would apply? Because I really want to know that. If there's some other factual thing which would put the gist of the action doctrine in play or take it out of play, other than the district court's statement, which it took to be dispositive that there's no privity, ergo no gist of the action doctrine, please tell me what that other factual issue is. Because we're talking about a host of other items. There was the preliminary contract that dealt with the gate work. And then we go into the sphere of a whole bunch of other things that were never a part of that contract. This is the narrative that has been pushed, is that all these things are wrapped up into that contract that Polaris signed with Southgate Crossing. That's not what we're arguing here. We're talking about a whole bunch of extra-contractual things that were undertaken on the promise that he was going to become an equity partner in this thing. And this is why, I guess, because we're trying to forget that we're outside of that. We're talking about all these other items here. So your point is that the presence or absence of privity as it relates to Polaris and the other parties is irrelevant. It's irrelevant. Because there was one agreement that existed with Southgate that was not the subject of this suit because they weren't suing Southgate. Your view is there were all these other encounters between plaintiffs and the defendants that gave rise to what you claim to be a fraud. Yes, and there were significant misrepresentations documented in the record. The idea there wasn't a sufficiency of evidence, e-mails documenting that they were purposely keeping things from him in order to get him to do all this work. Okay. Thank you, Counsel. Thank you, Your Honor. Your Honor, in the summary judgment opinion, the court also noted that, again, defendants protest that they did not have any legal relationship with the plaintiffs. That's exactly right. We said they say we don't have a legal relationship. We say we don't have a legal relationship. And that's why the gist of the action doctrine does apply in this situation. So assuming it does apply, how do you get around the district court's ruling, which is you can't say at one and the same time, we have nothing to do with that contract, and then say, hey, they can't sue us in tort. There's a contract. Because we don't have an independent tort duty. They're trying to take contractual duties that were owed by. I understand their argument to be that your clients lied to them, bald-faced lies, that there's evidence that there were bald-faced lies to lure Pilar into spending time, money, effort, energy, to do something for the benefit of your clients when there was never an intention to make them whole or to give them the benefit of what they were indicating would be the benefit associated with that. Now, that's the argument. That's what was tried. So when you say there's no tort duty, you can't really be taking the position, Mr. Simpson, that your clients were free to lie to Mr. Pilar to get him to do things. Can you? No, Your Honor. The tort issues, the tort misrepresentations, the alleged misrepresentations are all intertwined with the contract with Mr. Pilar and. . . I'm having trouble with the same thing the district court judge did. How can you say we've got nothing to do with that contract and then say, hey, they can't sue us in tort? How can you at one and the same time take the position that you're protected by the gist of the action doctrine because there's a contract here and then say we've got nothing to do with the contract? How can that possibly be the law? Well, that is the law. How can it be the law? How can it be the law that you can say there are no contractual remedies for this person because we've got nothing to do with the contract and then say there's no tort remedies for you because there's a contract floating out there somewhere? And that's where unjust enrichment comes in because unjust enrichment allows an imposition of a remedy, not a duty, in such a situation. That's this recent version of the Supreme Court case. But there is no duty outside of the contract. Do you have any law at all for the proposition that somebody who is not a party to the contract is free to invoke the gist of the action doctrine and say there are no tort remedies available to you? That's the Addy case. That was Attorney D'Amour in the Addy case. That's exactly what it was. He had no contractual privity. He was an officer. And that's what the Addy case says. And there are other cases under the gist of the action doctrine in other jurisdictions that so hold because it's all intertwined in the contract, and especially here where you have people who are acting for Southgate Development Group and they're trying to say you're acting for the mortgage lender. The mortgage lender owes no duty to the contractor on the land. The landowner does. They're trying to conflate that and impose a duty through the contract because, as a matter of law, a mortgage lender doesn't owe that duty, owe a duty to them. Well, when you say through the contract, I understand them to be saying, no, we're not going through the contract. That's not what the complaint says. The complaint lays it out. We were promised a permit. We entered into the contract because of the permit. I thought you said just a few minutes ago when you were up here for your opening argument, Mr. Simpson, that everybody was in agreement here that there was not a contract involving these people. Your argument for why you didn't have to make a Rule 50 motion was there's nothing in dispute because they said we're not in the contract and we said we're not in the contract. So everybody says we're not in the contract. If that's the truth and that's the way the case was tried, I have to say you got me flummoxed by standing up here and saying this is all about contract remedies just to the action. If everybody's agreed that it has nothing to do with the contract, what's the foundation for your argument? Because the theory of the case is that these individuals are acting for the mortgage lender. They amended their complaint to take out that they were acting for Southgate Development Group, which they were and which it is contested that they were doing. They were. They took that out because they know the gist of the action doctrine bars those claims. And they structured their complaint to argue that these people who wear two hats are acting for Oceanview. But they didn't put on any evidence that they were acting for Oceanview. There is zero evidence that they were acting for Oceanview. There is plenty of evidence that they were acting for. At the end of the day, this is very important to how this case gets disposed of on appeal. At the end of the day, is your argument that they do say we're involved with the contract, but they just didn't support it with evidence? Not that they agree and we agree that there's nothing to do with the contract, but that their position is we are involved with the contract, but they didn't support it with evidence. Is that the argument you're making to us? We say that, what we say is they pled themselves out of, because. Help me out. Can you answer yes or no to what I just asked and then explain? Sure. Yes, they. That is your argument? Yes, they are associated with the contract acting on behalf of Southgate Development Group. That's your position that that's their, that's how they tried the case, but they didn't support it with evidence? No, their argument was you don't have a, you're not acting for Southgate Development Group, you're acting for the mortgage lender, and we've said on summary judgment, they say we're acting for the mortgage lender, we have nothing to do with this under their theory, and the gist of the action doctrine bars that. All right. I don't mean to be obtuse, and maybe you guys will, my colleagues will give me just a moment, but I really am, this is really important. I agree. Either, maybe I've got a false choice in my mind here, Mr. Simpson, but it occurs to me that either the parties were in alignment that your clients really weren't involved in a contractual arrangement, and that's how the case was tried, or that there's a disagreement and that one side, the plaintiffs, made an argument that there was contractual involvement, and you said on the other side, no, we've got nothing to do with the contract. Now, I don't think there's a third alternative. I think you've presented us with a situation where one of those two things is the case. I'm just trying to get to the question of what do you assert is the case? Is it that both parties agreed there was nothing to do with the contract here when they were suing your clients, or that the plaintiffs tried this case on a theory that included we've got contractual remedies against these defendants? Which of those two things is going on here? What's your position? To answer that very last part first, I think, they certainly did not argue the case on a theory that they had contractual remedies against my clients. Their theory of the case was you're liable acting for Oceanview, and Oceanview as the mortgage lender is liable. Ours is a matter of tort, not as a matter of contract. They were arguing that was a matter of tort, yes. We argued you've got a contract with Southgate Development Group. That contract imposes all the duties you're claiming is a contract to get a permit, whether or not you have to get a permit. The contract says you're responsible for the permit. He says Southgate Development Group was responsible for that. He's not suing them for that. He's suing Oceanview for it. And the question then becomes who's controlling who? Is that it? There's factual issues that were tried to a jury about who was exerting control over what entity? It really was who were Chang and Du Bois acting for? Right. Who's running what? Correct. Okay. And that drives the question of whether or not contracts are the sole source of remedies or not? The contract determines that. What they're trying to get are damages under that contract and under the gist of the action doctrine that bars it. They're trying to get it through the back door by asserting a tort claim, and that's why the gist of the action doctrine exists. I think what Judge Jordan might be driving at, and if I'm wrong, Judge, please let me know, but I think what he's trying to drive at is if there is a question as to whether this contract with Southgate encompassed all these other tasks that Mr. Pallara did at the behest of your clients, isn't that an issue of fact as to the scope of the contract, what it contemplated? And, therefore, that makes it a fact issue that should have been brought up at Rule 50. No, because we have to go back to the summary judgment side of things. At that time, certainly, their only argument is their complaint, and they're bound by their complaint, and we didn't agree to try the case any other way than based upon the second minute complaint, which is you're acting for Oceanview, we don't have a contract with Oceanview, and we say you're right, there's no question of fact about that, there is no question of fact. They don't allege it, they don't argue it in their motion, and we don't say, yes, we do have a contract, we say we don't, and the judge says as a matter of law that just the action doctrine doesn't apply there, and it does, and that's what Hattie says. Actually, I think what the court said was you're not in privity of contract. That's what I understood to be the linchpin of the district court's decision. But, in any event, I think I understand your position. Well, thank you, counsel. Thank you. We'll take the case under advisement, and like the prior case, we'd like to greet you to amend you.